UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No. 1:21-cr-144-2 (RBW) |
| TAMMY A. BRONSBURG, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO MOTION FOR EARLY TERMINATION OF PROBATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant Tammy A. Bronsburg's motion for early termination of probation. ECF No. 90. Bronsburg seeks early termination based on the decision in *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023), holding that a defendant convicted of a single petty offense may not be sentenced both to imprisonment and to probation for that offense. *Id*. at 454. Bronsburg, like Little, received a split sentence of imprisonment and probation. Having already served the imprisonment component of her sentence—and days after the Court set a hearing on her alleged probation violations—Bronsburg seeks to terminate the remaining probationary period. But early termination is not the appropriate remedy for an illegal sentence (i.e., one in excess of the statutorily authorized term). Indeed, as reflected in the D.C. Circuit's decision in *Little*, the proper remedy is to vacate the illegal sentence so that the defendant may be resentenced to a lawful term. *Id.* at 461 ("So we vacate Little's sentence and remand to the district court for resentencing."). If Bronsburg's illegal split sentence were properly challenged, the Court at resentencing should impose a term of incarceration or probation that is within the statutory limit, recalibrating the punishment scheme to reflect the statutory sentencing factors in 18 U.S.C. § 3553(a) and giving credit for time served under the illegal sentence originally imposed.

On January 6, 2021, while members of Congress gathered in the United States Capitol to certify the results of the 2020 presidential election, Bronsburg (1) along with deceased co-defendant Mark Aungst, entered the Capitol after watching rioters climb the scaffolding, hearing tear gas being deployed and seeing the billows of smoke rise from the Lower West Terrace; (2) entered the Capitol Building twice from the Upper West Terrace being present at that location for three breaches of the various entries; (3) watched and filmed property destruction outside the Capitol, including windows that were shattered and two doors that were breached on the Upper West Terrace; (4) entered and remained in a sensitive area of the Capitol Building, Senate Conference Room S-145, drinking Jack Daniels there with other rioters, despite seeing police in riot gear trying to remove rioters from the building and (5) upon their return to the bus taking them home, both bragged to the other passengers that they had been inside the United States Capitol building.

Bronsburg pleaded guilty to Count Four of the Second Superseding Information, charging her with illegally parading, demonstrating, or picketing in a Capitol Building, in violation of Title 40 U.S.C. § 5104(e)(2)(G). The Court sentenced Bronsburg to a "split sentence"—a term of imprisonment and a term of probation: 20 days' incarceration followed by 24 months' probation, $500 in restitution, and a $10 special assessment. ECF No. 82.  She served her 20-day prison term, which ended on March 17, 2023.  Bronsburg now asks this Court to terminate her 24-month term of probation, having served less than half of that term. The Court should deny this motion because resentencing—not terminating the probation portion of an illegal split sentence—is the proper avenue for remedying the illegality of that sentence; resentencing Bronsburg would not violate the Double Jeopardy Clause; and in any event, Bronsburg does not meet the grounds warranting early termination of probation.

I.     **Factual Background**

On September 21, 2022, the Government filed a comprehensive Sentencing Memorandum detailing Bronsburg's participation in the Capitol Riot. ECF No. 70. The Government incorporates by reference its Sentencing Memorandum, the arguments made at the Sentencing Hearing in this case, which took place on January 5, 2023, and the exhibits used at that hearing, *see* ECF No. 81. Without rehashing the entire factual background from the Government's Sentencing Memorandum, some points of Bronsburg's conduct warrant continued emphasis below.

On January 5, 2021, Bronsburg and her co-defendant, Aungst, traveled by bus from the Williamsport, Pennsylvania area to Washington, D.C. to attend the "Stop the Steal" rally on January 6th. After the speeches, they marched with hundreds of other people to the Capitol Building, taking videos and pictures throughout their route all the way to the Upper West Terrace.

After arriving on the Upper West Terrace at around 2:23 p.m., Bronsburg and Aungst observed and filmed rioters bashing out one of the windows by the Senate Wing Door and rioters climbing through the broken windows. Nonetheless, they entered the Capitol twice. Bronsburg and Aungst first entered through the Senate Fire Door near the Parliamentarian's office about 2:46 p.m., leaving about 30 seconds later. Bronsburg and Aungst then entered through the Senate Wing Door at approximately 3:06 p.m. Both proceeded to Senate Room S-145, a space used for the spouses of Members and Senators, where they celebrated their entry into the Capitol with other rioters and drank from a bottle of Jack Daniels. At 3:14 p.m., at police direction, Bronsburg and Aungst left the conference room and then the Capitol building. On the bus ride home, Bronsburg bragged to other rioters that she had entered the Capitol, claimed that she had done nothing wrong, and posted a video of her time inside to Facebook. ECF No. 70 at 14, 18.

On March 19, 2021—after her arrest and FBI interview—Bronsburg made a post to her Facebook account calling "JANUARY 6TH PATRIOTS DAY" that she would "RECOGNIZE [] WITH A SHOT OF JACK DANIELS EVERY YEAR." ECF No. 81 (Sent'g Ex. 5). Bronsburg further claimed that she "would not have been there if they didn't STEAL THE ELECTION." *Id.*

## II. Procedural Background

On January 28, 2021, Bronsburg was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G), and arrested in Pennsylvania on February 4, 2021. On March 11, 2022, Bronsburg was charged in a four-count Second Superseding Information ("SSI") on the same offenses. On June 27, 2022, Bronsburg pled guilty to Count Four of the SSI, charging her with violating 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. For her conviction on a single count of violating 40 U.S.C. § 5104(e)(2)(G), Bronsburg faced a maximum of six months of imprisonment and a fine of up to $5,000, as well as $500 in restitution under the terms of her plea agreement.

On January 5, 2023, this Court sentenced Bronsburg to 20 days' incarceration followed by 24 months' probation, $500 in restitution, and a $10 special assessment. ECF No. 82. In imposing sentence, this Court cited as significant Bronsburg drinking whiskey inside S-145, as well as her glorification of January 6 in a post-arrest Facebook post. The Court also expressed a lack of confidence that Bronsburg would not be swayed by future political rhetoric. Bronsburg has served her 20-day prison term, which ended on March 17, 2023.

On June 30, 2023, Probation filed a petition to modify Bronsburg's conditions to include mental health and substance abuse conditions due to Bronsburg's positive tests for THC on three occasions in March and April 2023, as well as her attempt to achieve a false negative on two of those occasions. ECF No. 84. This Court granted the requested modifications. ECF No. 85. On

4

January 11, 2024, Probation filed another petition noting that Bronsburg had tested positive for THC use on four occasions in June, August, and November 2023. ECF No. 86. On January 12, 2024, this Court ordered a hearing on the violation report to be held on January 29, 2024. ECF No. 87.

On January 18, 2024, Bronsburg, through counsel, filed a motion for early termination of probation. Bronsburg argues that termination should be terminated early in the interest of justice under 18 U.S.C. § 3564(c), on the grounds that because her split sentence is illegal under *Little*, continued supervision offends the Double Jeopardy Clause, notwithstanding her violations of the terms of that probation. ECF No. 90.

Undersigned counsel reached out to Probation to ascertain their position on early termination; Probation objects to early termination.

### III. Resentencing Is The Appropriate Remedy For An Unlawful Split Sentence Of Incarceration And Probation

After considering the statutory sentencing factors in 18 U.S.C. § 3553(a), this Court sentenced Bronsburg to a split sentence, providing an interdependent mix of incarceration and supervision appropriate to Bronsburg's offense and circumstances.

But *Little* invalidated this split sentence regime, unraveling the Court's intentionally tailored sentencing scheme. Bronsburg does not ask this Court to correct her illegal sentence, seeking instead to end it early pursuant to 18 U.S.C. § 3564(c). But where a court has imposed an illegal sentence, the remedy is not to automatically terminate that sentence, thereby nullifying the court's carefully crafted punishment. Rather, the remedy for an unlawful sentence is to vacate the sentence in its entirety and impose a lawful sentence. *See Little*, 78 F.4th at 461 ("So we vacate Little's [split] sentence and remand to the district court for resentencing."); *see also Davenport v. United States*, 353 F.2d 882, 883-84 (D.C. Cir. 1965) (per curiam) ("The appropriate remedy in

this situation would appear to be to vacate appellant's [illegal] sentence and remand his case to the District Court for resentencing. . . ."); *Hayes v. United States*, 249 F.2d 516, 517 (D.C. Cir. 1957) (upholding resentencing by district court, noting that "if the sentence were invalid and defendant successfully attacked it, he could be validly resentenced though the resentence increased the punishment").

In the government's view there are three possible options available to the Court on resentencing, presented in no particular order: <u>first</u>, the Court may impose a term of probation or incarceration equal to the amount of time already served on probation or incarceration; <u>second</u>, the Court may impose a term of probation longer than the time already served on probation with credit for time already served on probation and additional credit for time spent incarcerated; and <u>third</u>, the Court may impose a term of incarceration longer than the previously served term of incarceration, with credit for incarceration time already served and additional credit for time spent on probation.[1]

The D.C. Circuit's decision in *Little* shows that resentencing is the proper path for addressing an unlawful split sentence. Little had already served his term of imprisonment when he submitted his brief to the D.C. Circuit and, for this reason, he argued that "the proper remedy [for his split sentence] is to reverse and remand with instructions that [he] be immediately discharged from probation and that an amended judgment be issued reflecting no probationary term." Br. for Appellant, *United States v. Little*, No. 22-3018 (July 28, 2022) at 40. The D.C. Circuit did not find merit in this position because it did not end Little's probationary term despite finding his split

---

[1] Whether resentencing rather than early termination of probation is the proper remedy for split sentences invalidated by *United States v. Little*, 78 F.4th 453, 454 (D.C. Cir. 2023), is presently before the Circuit Court in *United States v. Caplinger*, Case No. 22-3057 (Doc. No. 2032794, filed Dec. 21, 2023). In the alternative, this Court could stay both the violation hearing and ruling on Bronsburg's motion for early termination until that decision.

sentence to be unlawful. Instead, the D.C. Circuit "vacate[d] Little's sentence and remand[ed] to the district court for resentencing." *Little*, 78 F.4th at 461.[2]

Resentencing after the imposition of an unlawful sentence is especially appropriate where, as here and as in *Little*, the district court imposed a split sentence of incarceration and probation for the commission of a single offense. This Court crafted a sentence comprised of two components—a term of incarceration and a term of probation—to best address the statutory sentencing factors of 18 U.S.C. § 3553(a). Indeed, the Court specifically noted Bronsburg's reprehensible behavior inside the Capitol as well as her lack of subsequent remorse, in crafting a sentence that included both jail and probation—to in part deter Bronsburg from similar conduct in future. Both components of the sentence were integral parts of a unified package the Court constructed to fulfill its statutory responsibility to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute]." 18 U.S.C. § 3553(a). The components of Bronsburg's sentence were inextricably intertwined, and simply vacating the term of probation without any further consideration—as Bronsburg now requests—would undo the sentencing scheme carefully crafted by this Court.

Analogy to resentencing under the sentencing package doctrine underscores the need for resentencing here. "The sentencing package doctrine recognizes that when a defendant is found

---

[2] The resentencing in *Little* is instructive. Little was originally sentenced to a split sentence of 60 days' imprisonment and 36 months' probation. At the time of resentencing, after remand from the D.C. Circuit, Little had completed his term of imprisonment and approximately 18 months of probation. At the resentencing, the Court imposed a prison sentence of 150 days. *See Little*, No. 21-CR-315-RCL, Minute Entry for Resentencing (Jan. 25, 2024); *see also Little*, 21-CR-315-RCL, ECF No. 73 (Notes for Resentencing). The Court credited the 60 days of incarceration that Little previously served and gave an additional 30 days of credit against the new sentence for the 18 months of probation already served. Thus, after accounting for 90 days of credit for time previously served, Little will serve an additional 60 days of prison under the lawful sentence imposed at resentencing.

7

guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan, and that if some counts are vacated, the judge should be free to review the efficacy of what remains in light of the original plan." *United States v. Townshend*, 178 F.3d 558, 567 (D.C. Cir. 1999) (internal quotation marks omitted). In other words, where multiple counts of conviction are "properly viewed as a package," the "sentences [are], in essence, one unified term of imprisonment." *Id*. at 570 (internal quotation marks omitted). And "successful attack by a defendant on some but not all counts of conviction" may necessitate "vacat[ing] the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Greenlaw v. United States*, 554 U.S. 237, 253 (2008).

The logic underlying resentencing in the sentencing package context applies equally in the split sentence context. Like Little, Bronsburg was only convicted of a single count, and the sentence this Court imposed can only be attributed to that offense. The two components of Bronsburg's sentence must be "properly viewed as a package" tailored to the statutory sentencing factors as they relate to Bronsburg's single count of conviction. *Townshend*, 178 F.3d at 570. And since the decision in *Little* unraveled the "overall plan" this Court crafted here, *id.* at 567, the Court should be given the opportunity, to "reconfigure the sentencing plan to ensure it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)," *Greenlaw*, 554 U.S. at 253.

The connection between the two components of Bronsburg's split sentence is further evidenced by the short term of incarceration originally imposed. The Court imposed a period of incarceration of 20 days, which is well below the statutory maximum sentence of six months, knowing that a significant period of supervision in the form of probation would follow. The

sentence was fashioned holistically, and the probationary term was a companion to, and arguably an offset for, the short term of imprisonment. Now that the D.C. Circuit's decision in *Little* has invalidated the carefully balanced sentence originally imposed, the Court can address the interplay between these components and determine at resentencing how the initial sentence should be adjusted to bring it into conformity with what is legally authorized and to ensure that it achieves the intended punitive effect. This does not necessarily mean Bronsburg would face a longer term of incarceration or the imposition of a new term of probation if resentenced. Bronsburg is entitled to credit for the portion of her sentence already served, and upon review of the 18 U.S.C. § 3553(a) sentencing factors, the Court may decide that a new sentence equivalent to time served is appropriate.

Rather than seek resentencing, Bronsburg has dressed up her challenge to the legality of her split sentence as a motion for early termination of probation, seeking to lop off one component of the holistic sentence this Court imposed for her conduct on January 6. The Court should deny this motion as the wrong procedural vehicle to challenge her illegal sentence. The proper mechanism for challenging an illegal sentence is through a direct appeal or a challenge pursuant to 28 U.S.C. § 2255, not a motion for early termination of probation.[3]

## IV. Resentencing Would Not Violate Double Jeopardy

Resentencing Bronsburg (should she file the appropriate motion) would not violate double jeopardy so long as she receives credit for time already served. *See United States v. Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *6 (D.D.C. Jan. 17, 2024) ("the Court may impose an additional punishment on Little so long as it appropriately credits the time Little served in prison

---

[3] In the interests of justice, the government would waive any applicable procedural barriers to the relief sought in a § 2255 motion based on the D.C. Circuit's decision in *Little*, such as appellate or collateral review waivers, procedural defaults, or statutes of limitations.

and on probation against the punishment"); *United States v. Martin*, 363 F.3d 25, 37-38 (1st Cir. 2004) (unlawful term of probation must be credited against any subsequent sentence of incarceration); *United States v. Lominac*, 144 F.3d 308, 318 (4th Cir. 1998) (unlawful term of supervised release must be credited against any subsequent sentence of incarceration), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000).[4]

So long as credit is given for time already served, the Double Jeopardy Clause does not bar the imposition of an increased punishment at resentencing where a defendant does not have a legitimate expectation of finality in the sentence originally imposed. *See United States v. Fogel*, 829 F.2d 77, 87 (D.C. Cir. 1987) ("If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause. If, however, there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence."); *see also United States v. DiFrancesco*, 449 U.S. 117, 137 (1980) ("the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase").

The district court in *Little* recently held on remand from the D.C. Circuit that Little lacked a legitimate expectation of finality and could be resentenced to additional punishment for two independent reasons—both of which apply to Bronsburg. First, defendants like Little and Brsonburg cannot "have a legitimate expectation that [their] sentence is final because it was illegal." *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5; *see also Fogel*, 829 F.2d at 88

---

[4] Because probation is a less restrictive penalty than incarceration, crediting time served on probation against a future term of incarceration, or crediting time incarcerated against a future term of probation, should not be "a day-to-day offset." *Martin*, 363 F.3d at 39. While the precise crediting ratio in this case is for the district court to consider, the specific ratio should derive from a "fact-based inquiry" that looks to "the specific conditions of [defendant's] probation and the effect of [any crediting] on the underlying purposes of the [sentencing statute] as set out in 18 U.S.C. 3553(a)." *Id*.

10

(finding that one reason the defendant had a legitimate expectation of finality was because "an increase in appellant's term of probation was not necessary to bring the sentence into compliance with any statute" as "[t]he originally imposed sentence was not impermissible under the penalty statute"); *United States v. Rourke*, 984 F.2d 1063, 1066 (10th Cir. 1992) ("A defendant cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification.").

Second, a defendant who attacks an unlawful sentence—by appealing or otherwise challenging the sentence—can have no legitimate expectation of finality in the sentence originally imposed. *See Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5 (no legitimate expectation of finality where, "as in this case, the defendant voluntarily placed his sentence at issue by challenging it") (cleaned up); *see also Fogel*, 829 F.2d at 88 (finding that one reason the defendant had a legitimate expectation of finality was because "the increase in the original sentence [was] also not predicated on any action taken by the [defendant]"); *United States v. Andersson*, 813 F.2d 1450, 1461 (9th Cir. 1987) ("Andersson has no legitimate expectation of finality in the original sentence when he has placed those sentences in issue by direct appeal and has not completed serving a valid sentence."). Unlike Little, Bronsburg did not challenge her sentence on direct appeal. Nevertheless, Bronsburg seeks to terminate the probationary term by directly challenging the legality of her sentence. *Cf. Townshend*, 178 F.3d at 567 n.1 (finding no violation of double jeopardy and distinguishing cases that did "not involve situations in which a defendant has voluntarily placed his sentence at issue by challenging it via § 2255").[5]

---

[5] Bronsburg's challenge to the legality of her sentence through the improper avenue of a motion for early termination of probation is nothing more than an attempt to have her cake and eat it too. Bronsburg's should not be allowed to challenge the legality of her sentence through improper means and then claim that she maintains a legitimate expectation of finality in her illegal split sentence precisely because she did not raise her challenge through the proper means. Regardless,

11

The fact that Bronsburg already began serving her split sentence—and even that she already completed the term of imprisonment originally imposed—does not change this calculus. On remand from the D.C. Circuit, Little made similar arguments to Bronsburg, seeking to simply end the probationary component of his sentence without facing resentencing. And he argued that any punishment beyond the prison term he already had served violated double jeopardy. But as the *Little* district court and many other courts have recognized, a more severe punishment can be imposed at resentencing even after service of the original unlawful sentence has begun. *See, e.g.*, *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5 ("An increased punishment is permissible even if the defendant has begun serving the original, illegal sentence, although any punishment already incurred must be credited against the increased punishment."); *Hayes*, 249 F.2d at 517-18 ("a sentence which does not conform with the applicable statute [because it is below the statutory minimum] may be corrected though defendant . . . has begun to serve it"); *Lominac*, 144 F.3d at 317-18 (remanding to district court for resentencing after vacating supervised release component of split sentence, noting that term of incarceration could be adjusted upwards even after defendant completed originally imposed term of incarceration); *United States v. Versaglio*, 85 F.3d 943, 949 (2d Cir. 1996) (remanding to district court to consider imposition of increased fine after invalidating incarceration component of split sentence even after defendant already paid originally imposed fine in full); *United States v. Holmes*, 822 F.2d 481, 498 (5th Cir. 1987) ("Correction of a sentence can occur even if service of the sentence has begun, even if the correct sentence may be more onerous to the defendant than the original.") (citation omitted); *Christopher v. United States*, 415 A.2d 803 (D.C. 1980) (per curiam) (affirming sentencing court's sua sponte correction

---

as discussed above, Bronsburg can have no legitimate expectation of finality in her split sentence because it is illegal.

of illegal split sentence by eliminating probation component and imposing term of incarceration greater than that originally imposed where defendant had already begun serving sentence).

A line of Supreme Court cases—starting with *Ex parte Lange*, 85 U.S. 163 (1873), and including *In re Bradley*, 318 U.S. 50 (1943), relied on by Bronsburg in her motion (ECF No. 90 at 3-4)—does not hold otherwise. *Lange* and *Bradley* involved defendants sentenced to a fine and imprisonment under statutes that permitted the imposition of either a fine or imprisonment. In *Lange*, the Supreme Court held that the defendant was entitled to immediate release because he had already paid the statutory maximum fine in full, stating that resentencing him to the alternate punishment of imprisonment would "punish[] [him] twice for the same thing." 85 U.S. at 175. Similarly, in *Bradley*, the Supreme Court held that the defendant "[wa]s entitled to be freed of further restraint" because he had already paid the fine in full. 318 U.S. at 52. The full payments of the fines in *Lange* and *Bradley* meant that those defendants had already fully suffered one of two authorized alternative penalties such that no additional punishment could be imposed because anything more would exceed the punishment that was statutorily authorized. In other words, these cases stand for the unassailable but narrow proposition that "a defendant may not receive a greater sentence than the legislature has authorized." *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980).

Multiple courts, including the Supreme Court, have recognized the limited application of *Lange* and *Bradley*. *See, e.g., Jones v. Thomas*, 491 U.S. 376, 383 (1989) ("Lange therefore stands for the uncontested proposition that the Double Jeopardy Clause prohibits punishment in excess of that authorized by the legislature, and not for the broader rule suggested by its dictum.") (citation omitted); *id.* at 386 ("we do not think the law compels application of Bradley beyond its facts"); *see also Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *4 ("Little's [double jeopardy]

13

argument fails, however, because the case law does not support such a stark, sweeping reading of *Lange* or *Bradley*."). Indeed, *Lange* and *Bradley* are a narrow exception to the general rule that allows for resentencing after a defendant successfully challenges an unlawful sentence, even if service of the sentence has already begun and even if the corrected sentence is more onerous than the original. For example, the Fifth Circuit has recognized that the *Lange*/*Bradley* limitation applies only where one of the alternative penalties imposes the maximum authorized sentence and is satisfied in full:

> The *Bradley* cases stand apart from this general rule, however. The contempt statute authorizes only a fine or imprisonment, and the full payment of a fine satisfies one lawful alternative sentence. Sentences involving imprisonment not yet fully served or a term of imprisonment below the maximum authorized by an offense statute are not analogous, nor are cases in which a defendant appeals a dual sentence before satisfying either prong. What differentiates the *Bradley*-type case from these other cases is that a *Bradley* defendant who has paid his fine has suffered the maximum sentence authorized by the statutes.

*Holmes*, 822 F.2d at 498-99; *see also id.* at 499 n.30 (listing cases not controlled by *Bradley* because, among other things, they involved "resentencing . . . after sentences that were below the maximum authorized by offense statutes, or after a defendant appealed the entirety of his sentence or challenged a sentence but had not fully satisfied a sentence as great as the law allows").

Courts have recognized other limitations to the *Lange*/*Bradley* rule that are relevant here. For example, in *Lominac*, the Fourth Circuit held that "*Bradley* does not bar resentencing" where two components of an unlawful split sentence are of the type that can be credited against each other. 114 F.3d at 318. The defendant in *Lominac* was originally sentenced to both imprisonment and supervised release even though the applicable statute only authorized the imposition of incarceration in the defendant's particular circumstances. *Id.* at 317-18. And by the time the Fourth Circuit heard the appeal, the defendant had already served the entire term of incarceration and some portion of the term of supervised release imposed under the unlawful split sentence. *Id.* at

14

317. Nevertheless, the Fourth Circuit found that remanding to the district court for resentencing was appropriate because, "[h]ad the court recognized that it lacked authority to impose the . . . term of supervised release, it might have validly concluded that a prison term of longer than six months was appropriate." *Id.* The Fourth Circuit distinguished *Bradley*, noting that while the "'alternative sentences in *Bradley*'" of imprisonment and a fine "'were of a different type' and it simply was not 'possible to credit a fine against time in prison,'" "it is possible to credit [defendant's] time served on supervised release against any time to be served in prison." *Id.* at 318 (quoting *Thomas*, 491 U.S. at 384). In other words, "[u]nlike the monetary sanction of a fine, which cannot be converted into an equivalent temporal sanction, [defendant's] term of supervised release restrained his liberty for a known period of time that can be credited against any future sentence of imprisonment." *Id.*

Similarly, in *Versaglio*, the Second Circuit held that *Lange*/*Bradley* does not prohibit resentencing a defendant to an increased fine on remand where the district court had originally imposed an unlawful split sentence of a fine and imprisonment and where the defendant had already paid the full amount of the originally imposed fine. 85 F.3d at 948. The Second Circuit vacated the term of imprisonment because the fine had already been paid and noted that "[n]o issue was raised in either *Lange* or *Bradley* as to a sentencing court's power to revise the *amount* of a fine in light of the unavailability of imprisonment." *Id.* (emphasis in original). Thus, recognizing that the two components of the original split sentence were intertwined, the Second Circuit remanded the case to the district court to "consider[] whether to make an upward adjustment in the amount of the fine" in order to maintain "the aggregate punitive effect of [the original] sentence." *Id.* at 949.

Here, *Lange*/*Bradley* provides no bar to resentencing Bronsburg to a longer term of incarceration, or alternatively to a term of probation, for at least two distinct reasons. First, unlike *Lange* and *Bradley*, the alternative sentences here do not involve penalties that are impossible to credit against each other. Rather, as described above, any time previously served in prison and any time previously served on probation should be credited against any future sentence of imprisonment or probation imposed at resentencing. *See Lominac*, 144 F.3d at 318; *Martin*, 363 F.3d at 37-38; *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *6.

Second, the term of incarceration that Bronsburg completed was well below the statutory maximum of six months, and resentencing her to a longer term of incarceration or alternatively to a term of probation (taking account of any time already served) would not exceed the maximum punishment authorized by statute. Indeed, the district court intentionally crafted a dual sentencing scheme suited to Bronsburg's specific offense and circumstances in which each component weighed against the other and played an integral part in the overall plan. "Had the court recognized that it lacked authority to impose the [split sentence], it might have validly concluded that a prison term of longer than [20 days] [or that a standalone probationary term] was appropriate." *Lominac*, 144 F.3d at 317. Thus, the district court "should have the option of considering whether to make an upward adjustment in the" term of imprisonment or whether to impose a standalone term of probation at resentencing. *Versaglio*, 85 F.3d at 948.[6]

---

[6] *But see United States v. Pryer*, No. 21-CR-667-RCL-ZMF, 2024 WL 179914 (D.D.C. Jan. 17, 2024) (recommending that probationary term of split sentence be terminated where defendant already completed term of incarceration). In *Pryer*, another case in which a defendant moved for early termination of the probationary term of a split sentence in light of *Little*, Magistrate Judge Faruqui issued a Report and Recommendation to Judge Lamberth, finding that resentencing would violate double jeopardy and recommending termination of probation. Magistrate Judge Faruqui rejected arguments similar to those made here by the government, finding that "*Lange* and *Bradley* dictate the outcome." *Id.* at *2. Respectfully, the government intends to object to this Report and Recommendation, and submits that, as recognized by Judge Lamberth in *Little*, "double jeopardy

V.      **Bronsburg Has Not Met The Standard For Early Termination Of Probation.**

The Court may grant a motion for early termination of probation if, "after considering the factors set forth in section 3553(a)," "it is satisfied that [early termination] is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c). Bronsburg's reliance on *Little* is misplaced, and her remaining arguments do not meet this standard.

First, Bronsburg argues that the "interests of justice support the immediate termination of the remainder of her term of probation now" because her split sentence is illegal under *Little*. ECF No. 90 at 4. Not so. As explained above, the proper avenue for addressing the illegality of a split sentence of incarceration and probation is resentencing—not simply ending one component of an unlawful sentencing package. The interest of justice is not served by circumventing the proper remedy to an illegal split sentence. This is especially true where, as here, the Court carefully crafted a split sentence with two components—a term of incarceration, followed by a term of probation—to address the specific circumstances of a defendant's offense and satisfy its statutory responsibility to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute]." 18 U.S.C. § 3553(a). Granting Bronsburg's requested relief would allow her to escape the full penalty for her crime after having served one component of an illegal sentence that alone is "[in]sufficient . . . to comply with the purpose of [the sentencing statute]." *Id.*

Second, Bronsburg argues that her repeated violations of her probation "should not bear on whether this Court should terminate the probation in the interests of justice," because probation is part of an illegal sentence. But early termination must be "warranted by the conduct of the

---

principles do not prevent the Court from imposing additional punishment, so long as the Court credits the punishment already served by [Bronsburg] against any further penalty." No. 21-CR-315-RCL, 2024 WL 181260, at *2.

defendant *and* the interest of justice." 18 U.S.C. § 3564(c) (emphasis added).  Bronsburg's nine alleged Probation violations in less than a year of supervision does not show that her conduct warrants early termination.  *See e.g.*, *United States v. Wesley*, 311 F. Supp. 3d 77, 81–82 (D.D.C. 2018) ("even perfect compliance with conditions of release does not qualify as 'exceptionally good behavior' warranting early termination").  Rather, it shows that Bronsburg cannot (or chooses not to) comply with her conditions, and so continued supervision is appropriate.

   Moreover, consideration of the Section 3553(a) factors confirms that probation should not be terminated early. Bronsburg showed little respect for the law on January 6th when she drank from a bottle of Jack Daniels inside a conference room in the Capitol, bragged about her exploits, and celebrated the mob's accomplishments on Facebook after she was arrested. ECF No. 70 at 18; ECF No. 81 (Sent'g Ex. 5).  In addition, her prior drug and alcohol-related brushes with the criminal justice system, her lack of remorse after twice breaching the Capitol, and her continued non-compliance with her conditions, underscore the need for the Court's continued supervision of Ms. Bronsburg to deter her from future criminal activity.  ECF Nos. 84, 86, 70 at 14, 18.

## VI. Conclusion

For the reasons set forth above, the government respectfully requests that the Court deny Bronsburg's motion for early termination of probation and, upon the filing of an appropriate motion pursuant to 28 U.S.C. § 2255, resentence her to a legal sentence.[7]

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:   /s/ Michael L. Barclay
MICHAEL L. BARCLAY
Assistant United States Attorney
New York Reg. No. 5441423
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, DC 20530
Michael.Barclay@usdoj.gov
(202) 252-7669

---

[7] If Bronsburg files an appropriate motion pursuant to 28 U.S.C. § 2255, the government intends to file a supplemental sentencing memorandum prior to resentencing.