United States District Court
For The District of Columbia

| | |
|---|---|
| United States of America, | |
| v. | Case No. 21-cr-144-2 (RBW) |
| Tammy A. Bronsburg, | |
| Defendant. | |

**Reply in Support of Motion to Terminate Probation**

**I.  The interests of justice support early termination; Ms. Bronsburg's case is not on remand for resentencing and she has not filed a § 2255 motion.**

In its opposition to Ms. Bronsburg's motion for early termination of probation, the government suggests this Court vacate Ms. Bronsburg's sentence and resentence her instead. *See* Gov't Opp. at 1, ECF No. 91 (Jan. 26, 2024). Through resentencing, the government apparently seeks to relitigate the facts of Ms. Bronsburg's offense and the circumstances of her guilty plea and alleged probation violations. *Id.* at 2-5 (detailing facts of Ms. Bronsburg's offense and alleged probation violations).

As an initial matter, the government cites no authority for its request that this Court vacate Ms. Bronsburg's sentence and resentence her—except 28 U.S.C. § 2255, which is clearly not *the government's* motion to file. *See* 28 U.S.C. § 2255(a) ("A *prisoner* in custody . . . may move the court") (emphasis added). However much the government might wish it, Ms. Bronsburg also has not filed such a motion. The government fails to identify a procedural avenue through which it would be empowered to foist this choice upon Ms. Bronsburg. In fact, the government appears to misunderstand that district courts do not retain jurisdiction or inherent

1

authority to correct unlawful sentences. *See* 18 U.S.C. § 3582(b) ("Notwithstanding the fact that a sentence to imprisonment can subsequently be [modified in specified ways,] ... a judgment of conviction that includes such a sentence [of imprisonment] constitutes a final judgment for all other purposes."); *see also* 28 U.S.C.A. § 2106 (empowering *appellate* courts to "affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review"). Indeed, the Supreme Court has emphasized that given "the general rule of finality" governing criminal convictions and sentences, a judgment of conviction and sentence "may not be modified by a district court except in limited circumstances" provided by statute. *Dillon v. United States*, 560 U.S. 817, 824 (2010) (citing 18 U.S.C. § 3582(b)).

Indeed, no such authority exists to resentence Ms. Bronsburg given the current posture of her case. Ms. Bronsburg is not before this Court for resentencing and therefore those cases to which the government cites discussing increased penalties after an appeal—including *Little* itself—have no applicability here. *See* Gov't Opp. at 5-6, 7, 10 (citing *United States v. DiFrancesco*, 449 U.S. 117, 132 (1980) (remanded after government appeal); *Davenport v. United States*, 353 F.2d 882, 884 (D.C. Cir. 1965) (reversed and remanded for resentencing after defendant appeal of Fed. R. Crim. P. 35 denial); *United States v. Little,* No. 21-cr-315-RCL, Minute Entry for Resentencing (Jan. 25, 2024) (resentencing after appeal). Ms. Bronsburg is also not before this Court upon a Federal Rule of Criminal Procedure 35 or 36 motion to correct her sentence for clear error, a clerical error, or an error arising from oversight or omission. *See id.* at 6 (*citing Hayes v. United States*, 249 F.2d 516, 517–18 (D.C. Cir. 1957) (addressing correction of error that was "inadvertent")).

Thus, notwithstanding that every sentence a district court imposes is carefully crafted, because a district court does not have inherent authority to vacate it and start anew when some aspect of the sentence is deemed unlawful, the doctrine of finality dictates that not every unlawful sentence will be corrected. At the same time, there is no impediment to a court carefully considering the injustice of an unlawful punishment in the context of a motion to terminate post-conviction supervision.

Here, the interests of justice warrant termination of Ms. Bronsburg's probation. This Court was never allowed to impose two punishments for a single petty offense. *United States v. Little*, 78 F.4th 453, 454 (D.C. Cir. 2023). Now that she has been punished by fulling serving her imprisonment, Ms. Bronsburg's probation is unlawful. And the time she has so far served in custody and on probation is enough.

Ms. Bronbsurg's conviction is for a petty offense for which the maximum possible term of imprisonment is 6 months, or 180 days. The government's own sentencing chart shows that, overwhelmingly, petty offenders convicted under 40 U.S.C. § 5104 receive probation alone, and when in prison, do not spend the amount of time Ms. Bronsburg has spent in custody. As of August 25, 2023,[1] there were 341 cases where January 6 defendants were sentenced under 40 U.S.C. § 5104; the mode of days of custody (*i.e.*, the number that occurs most often) was **zero**, the median days in custody (*i.e.*, the value in the middle of all cases) was **zero**, and the mean days

---

[1] This is the most recent date for which a full statistical analysis of § 5104 cases alone was completed, but there is no reason to believe it has changed significantly, other than to increase the number of cases. The full sentencing chart is available here: https://www.justice.gov/file/1594006/download.

of custody (*i.e.*, the average) was **15 days**. A full 197 cases out of the 341—*i.e.*, **nearly 60 percent**—received no term of incarceration at all.

In contrast, Ms. Bronsburg served 20 days in custody and 8 months and 10 days of probation. This is the equivalent of a 9-month sentence.[2] This is more than enough punishment for a single petty misdemeanor punishable by a six-month term. Indeed, the punishment Ms. Bronsburg has already suffered makes *Hayes* even more inapposite. It speaks of "immunity for the prisoner," *Hayes*, 249 F.2d at 518, but in no way has Ms. Bronsburg escaped punishment for her § 5104 offense. Far from it. At this point, her time in custody and on probation far exceeds that of the vast majority of those sentenced for identical crimes.

Even if Ms. Bronsburg was properly before this Court for resentencing—which she is not—the government is wrong that this Court may increase Ms. Bronsburg's punishment now because "the *Lange/Bradley* limitation applies only where one of the alternative penalties imposes the maximum authorized sentence and is satisfied in full." Gov't Opp. at 14. Far from it. Instead, "*Lange* and *Bradley* dictate the outcome" here. *United States v. Pryer*, No. 21-cr-667-

---

[2] The government appears to admit that Ms. Bronsburg's time on probation should offset any potential additional incarceration. *See* Gov't Opp. at 14-15 (defendant's "'term of supervised release restrained his liberty for a known period of time that can be credited against any future sentence of imprisonment'") (quoting *United States v. Lominac,* 144 F.3d 308, 318 (4th Cir. 1998)); *see also Lominac*, 144 F.3d at 317 ("[b]ecause the Attorney General, under the statutory framework, cannot credit Lominac for time served on the unconstitutional term of supervised release, the district court on remand will give Lominac credit for that time against any new prison sentence").

Indeed, *Lominac* requires a one-to-one ratio: "On remand, however, any prison time that Lominac receives under a resentence must be reduced by the time he has already served for violating his release, that is, his six months in prison and the time he has served under the (new) unconstitutional term of supervised release." *Lominac*, 144 F.3d at 317.

RCL-ZMF, 2024 WL 179914, at *2 (D.D.C. Jan. 17, 2024) (recommending probation term be terminated in light of *Little* where defendant fully served imprisonment term).

The *Lange* Court considered the precise scenario before this Court today, and made clear that double jeopardy is meaningless if the government's arguments as to resentencing prevail: "[I]f the judgment of the court is that the convict be imprisoned for four months, and he enters immediately upon the period of punishment, can the court, after it has been fully completed…vacate that judgment and render another, for three or six months' imprisonment, or for a fine?  Not only the gross injustice of such a proceeding, but the inexpediency of placing such a power in the hands of any tribunal is manifest." *Lange,* 85 U.S. at 168.  It then underscored the same, tying it directly to the protection against double jeopardy: "But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction [against double jeopardy] of any value?"  *Id.* at 173.  It is manifestly not, and yet this is exactly what the government claims are options available to this Court.  Gov't Opp. at 6.  Notably, the government's reading of *Lange/Bradley* is undermined by the Supreme Court itself, which underscored in *DiFrancesco* its holding in *Lange* "that to impose a year's imprisonment (the maximum) after five days had been served was to punish twice for the same offense." *DiFrancesco*, 449 U.S. at 38–39 (citing *Lange*, 85 U.S. at 175).  Same too here.  To impose up to the maximum imprisonment sentence or more probation after Ms. Bronsburg had served her sentence of imprisonment is "to punish twice for the same offense." *Id.*

This holding resonates in D.C. Circuit case law as well, which, unlike the cases cited by the government, is binding on this Court. In *Tatum v. United States,* 310 F.2d 854 (D.C. Cir. 1962), the D.C. Circuit held—citing, *inter alia*, *Lange* and *Bradley*—that "[i]f appellant's first sentence was lawful a second sentence could not lawfully be imposed which increased it or made it more severe, once he had commenced serving confinement under it." *Id.* at 855. Ms. Bronsburg's imprisonment sentence was lawful in and of itself and has already been served; it cannot now be increased. All that remains is her partially completed term of probation, which is illegal and must be terminated.

The government claims that the *Lange* and *Bradley* principle has been narrowed and made inapplicable here, Gov't Opp. at 13, but *Lange* and *Bradley* precisely address those situations where alternative punishments are imposed for a single criminal act. Any "narrowing" claimed by the government is not narrowing at all but instead applying *Lange/Bradley* to scenarios unlike Ms. Bronsburg's. Indeed, *Jones v. Thomas*, 491 U.S. 376 (1989), which the government asserts limits *Lange* and *Bradley*, did no such thing. Rather, it addressed whether to *extend* the principle of *Lange* and *Bradley* to multi-count cases, which split the Supreme Court 5-4. All nine justices agreed on the continuing viability of *Lange* and *Bradley* regarding a single count of conviction. *See Thomas*, 491 U.S. at 384 ("*Bradley* and *Lange* both involved alternative punishments that were prescribed by the legislature for a single criminal act. The issue presented here, however, involves separate sentences imposed for what the sentencing court thought to be separately punishable offenses, one far more serious than the other."). The division among the justices was whether the *Lange/Bradley* principle would be extended to multiple-count situations; the viability of *Lange* and *Bradley* was never in doubt.

6

Notably, ten of the twelve federal circuit courts, including the D.C. Circuit in *Tatum*, have had occasion to rely on the *Lange/Bradley* line of cases. *See, e.g., United States v. Holmes,* 822 F.3d 481 (5th Cir. 1987) (discharging term of imprisonment where punishments were available in the alternative and fine was already paid); *United States v. DiGirlomo,* 548 F.2d 252, 254-55 (8th Cir. 1977) (same); *United States ex rel. Kanawha Coal Operators Ass'n v. Miller,* 540 F.2d 1213 (4th Cir. 1976) (same); *United States v. Sampogne,* 533 F.2d 766 (2d Cir. 1976) (same); *United States v. White,* 980 F.2d 1400 (11th Cir. 1993) (discharging fine where punishments were available in the alternative and term of imprisonment was already served); *Tatum,* 310 F.2d at 855; *Dye v. Frank,* 355 F.3d 1102, 1108 (7th Cir. 2004); *Breest v. Helgemoe,* 579 F.2d 95, 101 n.12 (1st Cir. 1978); *Warnick v. Booher,* 425 F.3d 842, 847 (10th Cir. 2005); *United States v. Edick,* 603 F.2d 772, 776-78 (9th Cir. 1979). Rather than *Lange* and *Bradley* retreating into obsolescence, these Supreme Court precedents address precisely the situation Ms. Bronsburg finds herself in: punished twice by two alternative disjunctive punishments for a single act.

The multi-count/single-count distinction also gravely undermines the government's reliance on the sentencing package doctrine. Gov't Opp. at 7-8. In justifying resentencing, the government invokes the "sentencing package doctrine" to argue that the "two components" of Ms. Bronsburg's sentence "were intertwined," which thus can be corrected on resentencing (again, somehow through a § 2255). Gov't Opp. at 7, 15. Even if Ms. Bronsburg were properly before this Court for resentencing—which she is not—the sentencing package doctrine would have no application here.

The government relies on *United States v. Townsend*, 178 F.3d 558 (D.C. Cir. 1999), which explains that "'when a defendant is found guilty on a *multicount* indictment, there is a strong

7

likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan,' and that if some counts are vacated, 'the judge should be free to review the efficacy of what remains in light of the original plan.'" *Id* at 567 (emphasis added and cleaned up).

These same considerations do not exist when a defendant is punished twice for a single count of conviction that, by definition, does not involve distinct crimes that each outlaw separate conduct and each carry separate penalties that might interlock in an overarching plan. Indeed, *Townsend* distinguished *Lange* and *Bradley* on this very basis: the latter each involved a single count, the former multiple counts. 178 F.3d at 570. *Townsend* thus has nothing to say about Ms. Bronsburg's two alternative mutually exclusive punishments for a single offense.

To be sure, Ms. Bronsburg recognizes the need for "carefully crafted punishment" and that appellate courts allow for adjustment of a sentencing scheme where one portion of a multicount sentence is invalidated. Gov't Opp. at 5, 8. But Ms. Bronsburg has not appealed and has not prevailed on a § 2255 motion, and her single petty offense conviction did not implicate a "sentencing scheme" simply because it was originally and erroneously doubly punished by probation and imprisonment.

In contrast to multicount sentences that are, "in essence, one unified term of imprisonment," *Townsend,* 178 F.3d at 570, probation and imprisonment for a single petty offense are not unified at all: they are mutually exclusive alternative punishments imposed on a single count of conviction. This is exactly the lesson of *Little*. 78 F.4th at 454; *see also United States v. Mandarelli*, 982 F.2d 11, 12 (1st Cir. 1992) (then Chief Judge Breyer writing: "Under the Sentencing Reform Act of 1984, 'probation' is an *alternative* to prison; a defendant may *not* be

8

sentenced *both* to probation and 'at the same time to a term of imprisonment.' 18 U.S.C. § 3561(a).") (emphasis in original).

The government's invocation of sentencing package theory is also unfaithful to the history of this case. When Ms. Bronsburg was originally sentenced, there was no discussion of how much punishment by imprisonment would be appropriate *in relationship* to how much punishment by probation would be appropriate, or vice versa. Rather, Ms. Bronsburg sought the least restrictive sentence available—probation—whereas the government advocated for 30 days of incarceration and 36 months of probation. *See* Def. Sent'g Mem. (filed under seal); Gov't Sent'g Mem., ECF No. 70 (Sep. 21, 2022). The parties nowhere discussed whether the term of imprisonment should increase or decrease in *proportion* to the term of probation. It is disingenuous for the government to now suggest that *Little* affirmed this supposed careful calibration when it in fact simply clarified what was always true—namely, that a court cannot impose the double punishment of probation and imprisonment for a single offense. *Little*, 78 F.4th at 461.

This Court simply was not allowed to "craft[] a dual sentencing scheme," Gov't Opp. at 16, for Ms. Bronsburg's single petty offense. There is no such scheme.[3] Even if the Court's

---

[3] Under 18 U.S.C. § 3562, probation serves all of the statutory purposes of sentencing—one of which is punishment—whereas under 18 U.S.C. § 3582, imprisonment serves the very same statutory purposes of sentencing as probation, with the important exception that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582. Thus, assuming Ms. Bronsburg's sentence of probation plus imprisonment was calibrated to achieve the statutory purposes of sentencing that neither one could achieve alone, probation and imprisonment should never have been imposed toward such an end for a single offense. Contrary to the government's position, probation and imprisonment do not operate interdependently to satisfy all of the statutory purposes of sentencing; for a single offense, they operate completely independently to satisfy distinctly different statutory purposes of sentencing, while also satisfying some of the same such purposes.

intent had been to punish Ms. Bronsburg with imprisonment followed by postconviction monitoring, given the settled federal sentencing regime, the legal effect of Ms. Bronsburg's sentence was "double punishment" for a single offense consisting of a sentence of probation and a separate sentence of imprisonment.  *Little*, 78 F.4th at 458; *id.* at 458-59 ("[P]robation is a standalone sentence combinable only with a fine, not with imprisonment," whereas imprisonment is a different standalone sentence of which supervised release is the component for "postconfinement monitoring." (quoting *Johnson v. United States*, 529 U.S. 694, 696-97 (2000)). The government's invocation of sentencing package doctrine as a basis for further increasing Ms. Bronsburg's punishment would only compound this error, requiring Ms. Bronsburg alone to bear the burden of it and resulting in a one-way ratchet upwards on her sentence.

      The government nevertheless insists that this Court can resentence Ms. Bronsburg and convert the probation or imprisonment that she has already served into an equivalent amount of imprisonment or probation, respectively.  Gov't Opp. at 6.  Sentencing package doctrine does not provide for the conversion of a disallowed penalty so that it can be added to an allowed one—it only provides for rebalancing of the complementary penalties between *multiple* counts.  *See Townsend*, 178 F.3d at 570.  The outcome the government seeks is simply an end-run around *Little* that this Court should reject.

---

      In contrast to probation, supervised release does operate interdependently with imprisonment, so that the two components complement one another.  Imprisonment serves all of the statutory purposes of sentencing except "promoting correction and rehabilitation" 18 U.S.C. § 3582, which are more appropriately satisfied through supervised release.  In comparison, supervised release serves all statutory purposes of sentencing except retribution and incapacitation, as codified in 18 U.S.C. § 3583, which are more appropriately satisfied through imprisonment.

The government erroneously relies on *United States v. Versaglio*, 85 F.3d 943, 949 (2d Cir. 1996). Gov't Opp. at 15. In *Versaglio*, the defendant was sentenced to a fine and imprisonment for a contempt conviction and promptly paid the fine. *Versaglio*, 85 F.3d at 945. He subsequently appealed on the grounds that the contempt statute only allowed for a fine *or* imprisonment and his sentence therefore violated double jeopardy under *Lange* and *Bradley*. *Id.* The Second Circuit agreed and held that because the defendant had already paid the fine, he could not be imprisoned. The court further held, however, that nothing in *Lange* or *Bradley* prevented the district court on remand from increasing the fine, which had not originally been set at the statutory maximum. *Versaglio*, 85 F.3d at 948.

*Versaglio* is distinct from Ms. Bronsburg's case, foremost, because she is not before the court for resentencing, and that is because she did not appeal her original sentence. This is significant because under the law in this Circuit, "application of the double jeopardy clause to an increase in a sentence turns on the extent and legitimacy of a defendant's expectation of finality in that sentence" and a defendant's appeal necessarily bears on that expectation. *See United States v. Fogel*, 829 F.2d 77, 87 (D.C. Cir. 1987) ("If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited. ..."); *see also Jones*, 491 U.S. at 394 (Scalia, J., dissenting) (stating that the relevant question for double jeopardy inquiry is 'whether the addition[al punishment] upsets the defendant's legitimate 'expectation of finality in the original sentence'" (quoting *DiFrancesco*, 449 U.S. at 139).

Thus, *Fogel* recognizes that a court can increase defendant's punishment "following a retrial and reconviction for the same offense," or in the course of a "government appeal of the sentence," or "if necessary to comply with a statute." *Fogel*, 829 F.2d at 85, 87. But *Fogel* also

11

holds that a court cannot increase a defendant's sentence where doing so "[is] not necessary to bring the sentence in compliance with any statute" as a defendant has an "expectation of finality in the severity of a sentence that is protected by the double jeopardy clause." *Id.* at 88. Here, it is not necessary to increase Ms. Bronsburg's imprisonment to bring her sentence into compliance with the law—the imprisonment portion of her sentence already complies with the law. Rather, increasing her punishment would upend the legitimate expectation of finality in the severity of her sentence. In this regard, the government's theory that sentencing package doctrine supports resentencing and additional punishment for Ms. Bronsburg is inconsistent with *Fogel* and should be rejected. Instead, the interests of justice support terminating Ms. Bronsburg's probation.

**II.     This Court need not wait until *Caplinger* to decide this motion.**

The government suggests this Court could wait on both this motion and to address the alleged violations until the D.C. Circuit issues an opinion in *United States v. Caplinger*, Case No. 22-3057 (Doc. No. 2030968, filed Dec. 11, 2023). Gov't Opp. at 6 n.1. But the government is simply wrong that the question of "whether resentencing rather than early termination of probation is the proper remedy for split sentences invalidated by [*Little*], is presently before the D.C. Circuit in [*Caplinger*]." *Id.* The government either misunderstands or misrepresents the posture, issues, and significance of *Caplinger*. *Caplinger* is not an appeal that will resolve whether, in a case such as Ms. Bronsburg's, early termination of probation is permissible in light of *Little*.

Like *Little*, *Caplinger* involved a split sentence of imprisonment and probation for a single petty offense. *See generally Caplinger*, No. 22-3057. *Caplinger* was filed after *Little*, was never fully briefed, and was ordered held in abeyance while the Court of Appeals was deciding *Little*.

When *Little* was decided, Caplinger filed a motion asking the Court of Appeals *itself* to summarily *vacate* the probation component of his sentence. The government opposed Caplinger's request as premature since *Little* was not final and the mandate had yet to issue. Once the mandate issued, the parties filed separate motions to govern future proceedings. Caplinger renewed his motion for summary *vacatur*—by the Court of Appeals—of his probation. Understandably, the government opposed Caplinger's request and instead asked the Court of Appeals to remand to the district court for resentencing—the same relief ordered in *Little* (*see Little*, 78 F.4th at 461 ("[W]e vacate Little's sentence and remand to the district court for resentencing.")). Notably, the government did not offer any substantive argument that a district court *cannot* vacate an unlawful component of a split sentence while leaving all other components intact. It merely opposed Caplinger's request to have the Court of Appeals do so in the first instance. *See* Gov't Motion to Govern Future Proceedings, Doc. #2030567 ("the government believes that, as in *Little*, the district court should decide any issues regarding resentencing in the first instance").

Although the defendant in *Caplinger* made the unorthodox request for the Court of Appeals to summarily vacate the probation component of his split sentence, it is pure speculation to assert that *Caplinger* might limit district court discretion to consider the unlawfulness of a previously imposed punishment when deciding whether to terminate probation early. *Caplinger* does not involve a motion to *terminate* probation under 18 U.S.C. § 3564 in circumstances such as here.[4] The government is plainly wrong to equate these two distinct situations. *Caplinger* is

---

[4] Ms. Bronsburg acknowledges that it is hypothetically possible that the Court of Appeals could rule in *Caplinger* that the proper remedy for an unlawful split sentence on appeal is for the unlawful components of the sentence to be vacated while leaving other aspects of the sentence undisturbed. But the vacatur of a component of an unlawful sentence by the Court of Appeals

13

instead inapposite and the government is incorrect that a ruling in *Caplinger* will be dispositive in Ms. Bronsburg's case.

In fact, even if the question of the appropriate means for addressing an unlawful split sentence could somehow reach the Court through *Caplinger*—which is itself speculative—it would be governed by prior precedent. In *United States v. Epps*, 707 F.3d 337, 346 (D.C. Cir. 2013), the Court of Appeals held that a defendant's appeal claiming his "sentence [was] excessive" was not moot where the defendant had completed the imprisonment portion, precisely because a favorable ruling on appeal "would necessarily inform the district court's evaluation of a motion for [early] termination or reduction of [the defendant's] term of supervised release." In other words, the Court has previously recognized that resentencing is not the exclusive means for providing relief to a defendant who has served an unlawful sentence.

For these reasons, this Court should reject the government's speculative claim that *Caplinger* will create a limitation on the information a court is allowed to consider when deciding a motion to terminate probation in a January 6th case involving a petty misdemeanor offense.

\* \* \*

It is the government, not Ms. Bronsburg, who is trying to "have [its] cake and eat it too." Gov't Opp. at 11 n.5. The government could have argued for a legal punishment, one of either imprisonment or probation but not both. It chose to argue for an illegal double punishment and it got its illegal double punishment. Ms. Bronsburg then went to prison, fully served her term, and is now being punished doubly with probation. It is the government who wants it both ways,

---

simply is not the same as early termination of probation by a District Court judge who has recognized that the probation was unlawfully imposed at the outset.

requiring Ms. Bronsburg to be both punished by imprisonment and then punished again for her alleged acts during a time she never should have been on probation—because together with imprisonment, her probation is unlawful.

Rather, the interests of justice demand that Ms. Bronsburg's unlawful probation be terminated. The government concedes that the Court has no authority to give two alternative and mutually exclusive sanctions for a single offense. The government recognizes that one such sanction—imprisonment—has been served. It must therefore be that the remaining sanction—probation—is a nullity. And with probation a nullity, the alleged violations should have no bearing on whether this Court should terminate probation in the interests of justice. Probation should be terminated because it is unlawful and a double punishment that violates the Double Jeopardy Clause.

This Court should decline the government's invitation to resentence Ms. Bronsburg through a mechanism that the government has no power to force upon defendants at its will. The Court should instead order Ms. Bronsburg's probation terminated as an unlawful double punishment in light of *Little*.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
JOANNA MUNSON PERALES
Research & Writing Attorney
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500